Samantha **THOMAS**, Plaintiff,

v.

**PUBLIC STORAGE, INC.,**
**et al., Defendants.**

**No. 12 Civ. 8804(LTS).**

United States District Court,
S.D. New York.

July 31, 2013.

Brian Adam Heller, Matthew Thomas Schatz, Schwartz & Perry LLP, New York, NY, for Plaintiff.

Cindy Schmitt Minniti, Reed Smith, New York, NY, for Defendants.

*Memorandum Order*

LAURA TAYLOR SWAIN, District Judge.

Plaintiff Samantha Thomas ("Plaintiff" or "Thomas") brings this action against Defendants Public Storage, Inc. and PSCC, Inc. (collectively, "Defendants" or "PSCC"), asserting sex discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as New York State

Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 *et seq.* Defendants have moved to compel arbitration and dismiss the complaint. The Court has reviewed carefully all of the parties' submissions and, for the following reasons, Defendants' motion is granted.

### BACKGROUND

PSCC, a self-storage facility that operates over 2,000 nationwide locations, hired Plaintiff as a relief manager in June 2010. Plaintiff alleges that, during her employment with PSCC, she experienced a "pattern and practice of continuous, unwelcome, humiliating and reprehensible" sexual harassment. (Compl. ¶ 12.) Plaintiff alleges that, when she complained to a supervisor about the harassment, PSCC retaliated against her by first transferring her to a work site that required a lengthy commute, then ultimately firing her. (Compl. ¶¶ 26, 30.)

PSCC has not challenged the merits of Thomas' claims, but moves for an order compelling arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 *et seq.* and dismissing the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. PSCC contends that all new hires are required to complete a series of "on-boarding" documents, one of which is an arbitration agreement ("Agreement"), and that, when Thomas began her employment on June 10, 2012, she digitally signed the Agreement as part of the "on-boarding" process. The Agreement provides that an employee shall "submit to final and binding arbitration, and not to any other forum, any claims by Employee or [PSCC] under state, federal or local law which arises out of or relates to Employee's employment with [PSCC], including without limitation claims for sexual harassment,

discrimination, wrongful termination ..." (Minniti Decl., Exh. B.) PSCC's records show that, on June 10, 2010, the username "SThomas3648" was successfully created to access PSCC's electronic on-boarding program. (Thomas Opp., Exh. B.)

Thomas does not dispute the Agreement's substantive sufficiency or the FAA's applicability, nor does she dispute that the terms of the Agreement would encompass her sex discrimination and retaliation claims. Instead, she argues that the Agreement should not be enforced because she never signed or even saw it. (Thomas Aff. ¶¶ 2, 5.) Thomas claims that she did not create the username "SThomas3648" and she believes that her district manager created the username. (Thomas Aff. ¶ 10.) She also claims that, while she remembers filling out a W4 form and questions regarding her address and social security number, the Agreement was not included in the on-boarding documents. (Thomas Aff. ¶¶ 5, 11.)

Defendants proffer that Thomas signed a May 28, 2010, offer letter which mentioned the Agreement, as well as an acknowledgment confirming receipt of PSCC's "Field Employee Handbook" ("Handbook"), which includes a mandatory arbitration provision. (Defs.' Reply, Exhs. B & C.) [1] Thomas does not deny signing an offer letter or receiving the Handbook. (Sur-reply Thomas Aff. ¶¶ 4–5.) She acknowledges that "[t]he offer letter states that Public Storage 'uses' arbitration and that employees are 'required to sign an arbitration agreement'" and that the Handbook "states that employment with the company is conditional 'upon agreeing' to arbitration." (*Id.* ¶ 4.) Thomas argues that references to arbitration in these documents do not constitute an agreement to

---

**1.** Defendants raised their arguments regarding the offer letter and employee handbook, for the first time, in their reply papers. Ac-

cordingly, the Court granted Thomas permission to file a sur-reply, which the Court has reviewed.

arbitrate her claims, and that, without actually signing an arbitration agreement, she could not be "bound to an arbitration agreement." (*Id.*)

DISCUSSION

■ A motion to compel arbitration is reviewed under a summary judgment standard, and may be granted "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Cohen v. UBS Fin. Servs., Inc.,* 12 Civ. 2147(BSJ)(JLC), 2012 WL 6041634, at *1 (S.D.N.Y. Dec. 4, 2012) (internal citations omitted). "In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law." *Gonzalez v. Toscorp Inc.,* No. 97 Civ. 8158, 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999). "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Cohen,* 2012 WL 6041634, at *2.

■ The only disputed issue in this action is whether Plaintiff agreed to arbitrate pursuant to the Agreement. While Defendants argue that Plaintiff's agreement is clear because she digitally signed the Agreement, Plaintiff's proffers that she neither saw nor signed the Agreement, and her allegation that her manager must have completed the "on-boarding" process on her behalf are sufficient to raise a genuine factual dispute as to whether she did, in fact, sign the Agreement. Plain-

tiff's signature, however, is not necessary to establish her assent to Defendants' policy regarding the arbitration of employment-related disputes.

■ "The FAA requires only that an arbitration agreement be in writing, not that it be signed. *See* 9 U.S.C. § 3. Parties may be bound to unsigned, written arbitration agreements as long as the 'ordinary principles of contract and agency' are satisfied." *Gonzalez,* 1999 WL 595632, at *2 (citing *Thomson–CSF S.A. v. American Arbitration Association,* 64 F.3d 773, 776–77 (2d Cir.1995)). "A non-signatory to an arbitration agreement may be bound by the principle of assumption [which] arises where a party's subsequent conduct indicates that it is assuming the obligation to arbitrate." *Id.* (internal quotations and citations omitted).

In *Manigault v. Macy's East, LLC,* 318 Fed.Appx. 6, 7–8 (2d Cir.2009) (summary order), plaintiff contended that she was not bound by her employer's dispute resolution program, as she had never signed a form acknowledging that the program would preclude her from filing grievances in a judicial forum. The Second Circuit directed the district court to grant defendant's motion to compel arbitration, holding that, by continuing her employment after receiving notice of the dispute resolution program, plaintiff had agreed to arbitration. *Id.* at 8 (applying New York contract law and finding that, "an employee may consent to ... [a] term[ ] of employment by continuing to work after receiving notice" of that term.[2] *Id.* at 8. Here, PSCC has proffered evidence that Plaintiff

---

**2.** Thomas argues that "[t]he offer letter and employee handbook ... do not create an agreement to arbitrate, but rather allude to an intent to enter into such an agreement." (Sur-reply Thomas Aff. ¶ 6.) The Handbook language, however, expressly subjected and conditioned her employment on final and binding arbitration of employment-related

disputes. "New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent" to arbitration where an employee received documents "that contain such information, continued with her employment, and did not opt out of arbitration." *Manigault,* 318 Fed. Appx. at 8 (internal citations omitted).

was on notice of the Agreement. (Sur-reply Thomas Aff. ¶¶ 3–7.)[3] Thomas does not dispute that she signed a May 28, 2010, offer letter which stated that, "[a]s part of the hiring process and as a condition of employment, all employees are required to sign an arbitration agreement as well as acknowledge and agree to all company policies." (Defs.' Reply, Exh. C.) Similarly, PSCC's records show, and Thomas does not dispute that, on June 11, 2010, she electronically signed an acknowledgment confirming receipt of PSCC's Handbook. (*Id.*, Exh. B.) The Handbook's table of contents expressly itemizes "Arbitration Agreement" under the "Employment" subheading. Page six of the Handbook states that "[a]ll employment at Public Storage is subject to and conditional upon agreeing to final and binding arbitration arising out of the employment relationship. The Arbitration Agreement is contained in the acknowledgment of receipt section of this Handbook." (*Id.*, Exh. A.); see also *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219, 2001 WL 204214, at *3 (S.D.N.Y. Mar. 1, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks, where, as here, the employee has signed an acknowledgment form.").

■ Plaintiff argues that "references to arbitration in the offer letter and the employee handbook do not describe what claims are covered, what the arbitration process would be, what rules the process would follow, or what arbitration even means," and therefore provided insufficient notice that she would be giving up her "right to [a jury]." (Sur-reply Thomas Aff. ¶ 6.) While the Handbook's description

of PSCC's arbitration policy does not specify that discrimination and wrongful termination claims are subject to arbitration, referring instead generally to "final and binding arbitration arising out of the employment relationship," arbitration clauses may cover statutory claims even if the "clause at issue does not mention [the specific] statutes or statutes in general." *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 615, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Similarly broad arbitration clauses have been enforced by the Second Circuit and in this district. *See, e.g., Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir.1987) (upholding arbitration clauses which generally referred to "[a]ll claims and disputes of whatever nature arising under this contract" and "[a]ny controversy arising out of or relating to this contract").

Given the evidence in the record that Plaintiff received notice of PSCC's arbitration policy at the beginning of her employment and continued to work for PSCC, Plaintiff has failed to raise a genuine issue of fact as to whether she assented to arbitration of this employment-related dispute. The Court will therefore compel arbitration of her claims.

### CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted. This action is dismissed, without prejudice to litigation of Plaintiff's claims in the arbitral forum, and the parties are hereby ordered to proceed with arbitration. This Memorandum Order resolves docket entry no. 11. The Clerk of the Court is request-

---

**3.** Plaintiff's reliance on *Alvarez v. Coca–Cola Refreshments, USA, Inc.*, 914 F.Supp.2d 256 (E.D.N.Y.2012) is misplaced. In *Alvarez,* the court declined to compel arbitration because, despite defendant employer's contention that it mailed plaintiff notice of and materials re-

lating to the dispute resolution program, plaintiff maintained that he never received any such materials. *Id.* at 8–9. Here, it is undisputed that Thomas was on notice of PSCC's arbitration policy.

ed to enter judgment accordingly and close this case.

SO ORDERED.